THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| **DANIEL JONES JR. &** § | | |
| **ERNEST MITCHELL,** § | | |
| Plaintiffs, § | | |
| § | **Civil Action No.** | |
| v. § | | |
| § | | |
| **RICHARD INDUSTRIAL GROUP, INC.,** § | | |
| Defendant. § | **JURY DEMANDED** | |
| § | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

**DANIEL JONES JR. & ERNEST MITCHELL**, Plaintiffs in the above numbered and styled cause, files their Original Complaint complaining of **RICHARD INDUSTRIAL GROUP, INC.,** Defendant herein, and in support thereof shows this Court as follows:

This is a suit in law and in equity, authorized and instituted pursuant to Section 1981 of the Civil Rights Acts of 1866, 42 U.S.C. §1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"). The jurisdiction of this Court is invoked to secure the protection of and redress the deprivation of rights secured by these laws protecting people such as the Plaintiffs from employment discrimination, including termination, motivated or based on race (Black/African American).

1

**Venue**

1. Venue is proper in the U.S. District Court for the Eastern District of Texas, Beaumont Division.  Venue in this Court is provided for in any district in which the private employer of the person maintains a place of business pursuant to 28 U.S.C. § 1391(b). A substantial part, if not all, of the cause of action accrued or arose in the Eastern District of Texas. Defendant maintains sufficient business contacts within a county in the Beaumont Division. Furthermore, Plaintiffs resided within the Beaumont Division during the pertinent time period in question.

**Parties**

2. Daniel Jones Jr. ("Mr. Jones", Black/African American) is a United States citizen residing in Texas during the relevant time period of Mr. Jones' claims. At all times material hereto, Mr. Jones was an employee of Defendant, as understood and defined by Section 1981 and Title VII.

3. Ernest Mitchell ("Mr. Mitchell", Black/African American) is a United States citizen residing in Texas during the relevant time period of Mr. Mitchell's claims.  At all times material hereto, Mr. Mitchell was an employee of Defendant, as understood and defined by Section 1981 and Title VII.

4. Richard Industrial Group ("Defendant" or "RIG"), Inc. is a corporation.  It may be served with this lawsuit by serving its registered agent for service of process, Arthur Richard II, 750 Pearl St., Beaumont, TX. 77701. At all times material hereto, Defendant was Plaintiffs' employer, as understood and defined by Section 1981 and Title VII.

## Facts[1]

5. Between 2012 and 2013 the Defendant, Richard Industrial Group (RIG), opened a new office on Hwy 90. Daniel Jones and Ernest Mitchell were a couple of the first employees who worked at that location. The Plaintiffs cleaned the yard up very nicely and also got the shops clean and ready to go. Then RIG started bringing in new employees (All of whom were White).

6. In 2016, a warehouse management position became open. Mr. Jones and Mr. Mitchell were overlooked for that position even though they were much more qualified than the person RIG selected. RIG hired the safety man Chris King (White). Mr. King had a meeting with Mr. Jones and Mr. Mitchell wherein he stated to them that he didn't know why RIG moved him to that position because he didn't know anything about what Mr. Jones or Mr. Mitchell did or how to run a warehouse. Mr. Jones and Mr. Mitchell had to train Mr. King. During that time period, Mr. Jones and Mr. Mitchell heard many unwelcomed racial jokes from their White coworkers.

7. In 2017, Chris King (White) was let go and RIG brought in Kenneth Callier (White). Mr. Mitchell and Mr. Jones were much more qualified for the warehouse management position than Mr. Callier. Once again Mr. Jones and Mr. Mitchell had to train another much less experienced White coworker. Promotional opportunities were never posted or offered to either Mr. Jones or

---

1  These facts are by no means exhaustive.

Mr. Mitchell. At this point the discrimination began to escalate into harassment including but not limited to the following events:

8. Mr. Jones and Mr. Mitchell on the whole were treated very differently than their White coworkers. For example, if Mr. Jones or Mr. Mitchell took a day off or had to leave early RIG wouldn't pay them. However, Donnie Elkins (White) broke his ankle at home and was off of work for 1 1/2 months. The Defendant continued to pay Mr. Elkins 40 hours every week even while Mr. Elkins was off.

9. Also Mr. Jones made a statement to Mr. Callier that he was afraid of cats. Then Mr. Callier and Mr. Elkins started to harass Mr. Jones and Mr. Mitchell with wild cats that were on the work site. On or about 2019, Mr. Callier and Mr. Elkins would bring cats into the break room where Mr. Jones and Mr. Mitchell would eat lunch. The cats would eat Mr. Jones and Mr. Mitchell's food. Mr. Callier and Mr. Elkins even went as far as to put a cat in Mr. Jones' truck. One day, on or about 2019, while Mr. Jones and Mr. Mitchell were cleaning the warehouse, Mr. Elkins called Mr. Jones' name, when Mr. Jones turned around to see what he wanted Mr. Elkin's held a cat in Mr. Jones' face.  Mr. Jones tried to run but ended up falling and skinning the right side of his buttocks. Mr. Jones reported this incident to HR but nothing was done about it.

10. On rainy days Mr. Callier would send his other 2 men, both White, home with pay, but made Mr. Jones and Mr. Mitchell stay the whole day.

11. In 2018 Mr. Mitchell was making a delivery to BASF. On arrival, a White RCI employee (Don Ault) told Mr. Mitchell that he would bring the delivery to the

back because "Blacks" weren't allowed. Mr. Ault also made this statement in front of James Martin (White) an employee for Zachary.

12. From on or about 2017 to 2020, Mr. Jones and Mr. Mitchell complained about the restrooms being unsanitary to use but RIG refused to fix them. The White employees would go in there, stop up the toilet, and then make Mr. Jones and Mr. Mitchell go fix it. Their White coworkers would even put their feces on the walls, knowing that Mr. Jones and Mr. Mitchell would have to go clean it.

13. On or about 2019, Mr. Callier and Mr. Elkins put a cat in Mr. Jones and Mr. Mitchell's storage room over the weekend and the cat relieved itself with its feces over everything. Mr. Jones and Mr. Mitchell had to clean it up on the following Monday.

14. From on or about 2017 to 2019, Mr. Jones and Mr. Mitchell's White coworkers would wear rebel flag shirts and bandanas at work. In 2019, Plaintiffs reported the cat's pissing in the storage room and rebel shirts being worn by White coworkers to Mr. Callier and Kenneth Daigle (HR) but nothing was ever done.

15. On or about November 2019, RIG brought in 3 white employees from a job that ended in Colorado. These men came in and took over everything. Mr. Callier told Mr. Jones and Mr. Mitchell to stay out of their way and let them do what they do.

16. Throughout the years Mr. Jones and Mr. Mitchell worked for RIG, RIG has employed over 3500 employees but not a single African American was employed in a management position.

17. On or about January 2020, Mr. Jones and Mr. Mitchell were let go because work was allegedly to slow. However, soon after Mr. Jones and Mr. Mitchell were let go, in March 2020, RIG brought in employees that worked in the field to do Mr. Jones and Mr. Mitchell's jobs. These all-White employees were superintendents, welders, pipe fitters, and operators. After RIG brought them in, the restrooms were updated, central air and heat were installed for the first time. Not a single African American employee is still working there.

18. Defendant's action of laying off Mr. Jones and Mr. Mitchell and not affording them the same opportunities for growth within RIG was motivated by their Race and RIG's actions are willful.

19. Both Mr. Jones and Mr. Mitchell received their Right to Sue Notices from the EEOC on February 26, 2021.

## CAUSES OF ACTION

20. Plaintiff hereby incorporate all facts stated in the preceding paragraphs as if set forth fully herein.

**Race Discrimination and Retaliation under Section 1981**

21. Defendant has intentionally discriminated against Plaintiffs based on their race (Black/African American) in violation of Section 1981 and terminated Plaintiff due to their race.

22. Defendant also retaliated against Plaintiffs for their opposition to such unlawful discriminatory practices.

23. As a result of Defendant's actions in violating provisions of Section 1981 as described herein, Plaintiffs have suffered and continue to suffer a loss of wages,

benefits and other compensation due in the past and which will be suffered and due in the future.

**Race Discrimination and Retaliation under Title VII**

24. Defendant has intentionally discriminated against Plaintiffs motivated by their race (Black/African American) in violation of Title VII and terminated Plaintiffs motivated by their race.

25. Defendant also retaliated against Plaintiffs for their opposition to such unlawful discriminatory practices.

26. As a result of Defendant's actions in violating provisions of Title VII as described herein, Plaintiffs have suffered and continue to suffer a loss of wages, benefits and other compensation due in the past and which will be suffered and due in the future.

## DAMAGES

27. Plaintiffs seeks actual damages, including but not limited to lost wages and benefits.

28. As a result of Defendant's intentional, discriminatory and unlawful acts described above, Plaintiffs have suffered and continue to suffer actual damages and compensatory damages including but not limited to mental anguish, humiliation, emotional distress and damage to their professional reputation, all to their detriment and compensable at law.  Plaintiffs also sue for the recovery of punitive damages as authorized by statute.

29. Plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this action for preliminary and permanent injunction

    is the only available means of securing adequate relief. Plaintiffs presently suffer and will continue to suffer irreparable injuries from Defendant's policies, practices, customs, and usages set forth herein.

30.  The effect, purpose and intent of the policies and practices pursued by Defendant has been and continues to be to limit, classify, and willfully discriminate against employees on the basis of their race and otherwise adversely affect their status as employees because of same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that this Court advance this cause on the docket, order a speedy trial at the earliest practicable date and cause this case in every way to be expedited and upon such hearing to:

i.  Grant Plaintiffs a preliminary and permanent injunction enjoining Defendant, its agents and employees and those acts from continuing to maintain the policies, practices, customs or usages which discriminate against Plaintiffs because of race, or otherwise deprive Plaintiffs of their rights and privileges secured by Federal Law.

ii.  Grant Plaintiffs a declaratory judgment that the practices, policies, customs and usages complained of herein are violative of their rights protected by Section 1981 and Title VII.

iii.  Order the Defendant to grant Plaintiffs additional equitable, actual and compensatory relief, requiring said Defendant to make Plaintiffs whole, including but not limited to promotions, back pay and front pay including all accrued interest, insurance benefits, pension benefits, bonuses, vacation benefits, sick leave, and

        other incidental benefits that attach to and were incidental to Plaintiffs' employment with Defendant and incidental to each such position sought by Plaintiffs, as authorized by statute.

iv.    Order the Defendant to pay Plaintiffs compensatory damages.

v.     Order the Defendant to pay Plaintiffs punitive damages.

vi.    Grant an Order restraining Defendant from any retaliation against Plaintiffs for participation in any form in this action.

vii.   Grant Plaintiffs their costs incurred herein, and as part of such costs, reasonable Attorneys' fees and Expert witness fees and such further, additional or alternative relief and affirmative action orders as may appear equitable and just.

                                        Respectfully submitted,

By:    /S/ Ashok Bail_____
         ASHOK BAIL
         The Bail Law Firm, PLLC
         STATE BAR #24043541
         3120 Southwest Freeway, Suite 450
         Houston, Texas 77098
         (832) 216-6693 (Tel)
         (832) 263-0616 (Fax)
         ashok@baillawfirm.com

         ATTORNEY FOR PLAINTIFF